# EXHIBIT A

EXHIBIT A

FILED
[illegible]
2011 JUN 24  PM 2: 11
WEST JORDAN DEPT.

Marcus R. Mumford (12737)
Ryan R. West (10398)
Tyson B. Snow (10747)
MUMFORD WEST & SNOW, LLC
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101
Phone: 801-559-0020
Fax: 801-559-0021
mrm@mumfordwest.com
rrw@mumfordwest.com
tbs@mumfordwest.com

*Attorneys for Plaintiffs*

---

IN THE THIRD JUDICIAL DISTRICT COURT, WEST JORDAN DEPARTMENT
IN AND FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| RICHARD DUTCHER and GWEN DUTCHER, RICHARD FERGUSON and MICHELLE FERGUSON; and CATHERINE RICHARDS AHLERS, on their own behalf and on behalf of a class of similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> STUART T. MATHESON; MATHESON, MORTENSEN, OLSEN & JEPPSON, P.C., RECONTRUST COMPANY, N.A.; BAC HOME LOANS SERVICING LP, and BANK OF AMERICA, N.A., <br><br> Defendants. | **CLASS ACTION COMPLAINT** <br><br> Case No.: 110 409402 <br><br> Judge: Stone <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Richard and Gwen Dutcher, Richard and Michelle Ferguson, and Catherine Richards Ahlers (hereinafter collectively referred to as "Plaintiffs"), on their own behalf and on behalf of a class of similarly situated persons described below, by and through their counsel Mumford West & Snow, LLC, bring this Class Action Complaint against Defendants Stuart T.

Matheson, Matheson, Mortensen, Olsen & Jeppson, P.C., ReconTrust Company, N.A., BAC Home Loans Servicing, LP, and Bank of America, N.A. (collectively "Defendants"), as follows:

## NATURE OF THE CASE

1.      Defendants have demonstrated a long-standing pattern of illegal activity in taking homes from Utah homeowners, and even after Utah law was amended May 10, 2011, they still refuse to comply with Utah law. Plaintiffs bring this action to stop Defendants from conducting unlawful and improper foreclosure sales in the state of Utah, to recover for the wrongful taking of homes from homeowners in Utah, and for statutory relief and attorney's fees under Utah Code Ann. §§ 57-1-21, 57-1-23.5, 76-10-1605, 76-10-1801, and the common law.

## THE PARTIES

2.      Plaintiffs Richard and Gwen Dutcher ("Dutchers") are citizens of Utah, who reside at 675 East 1400 North, Mapleton, Utah 84664. The Dutchers owned their home until June 14, 2011, when Defendants illegally foreclosed on the property.

3.      Plaintiffs Richard and Michelle Ferguson ("Fergusons") are citizens of Utah, who reside at 4452 South 5729 West, Salt Lake City, Utah 84128. They owned their home until May 24, 2011, when Defendants illegally foreclosed on the property.

4.      Plaintiff Catherine Richards Ahlers ("Ahlers") is a citizen of Utah who, until recently owned the residence located at 5906 North Fairview Drive, Park City, Utah 84098. She owned her home until May 24, 2011, when Defendants illegally foreclosed on the property.

5.      Defendant Stuart T. Matheson ("Matheson") is a practicing attorney licensed in the state of Utah and at all times relevant herein was a citizen of Utah.

6. Defendant Matheson Mortenson Olsen & Jeppson, P.C. ("MMOJ") is a Utah professional corporation with its principal place of business in the state of Utah and at all relevant times herein was doing business in the state of Utah. Upon information and belief, Defendant Matheson is an owner, officer, member, and/or shareholder of MMOJ and, in that capacity, acted on its behalf.

7. Defendant ReconTrust Company, N.A. ("ReconTrust") is a Texas company, with its principal place of business in California and at all times relevant herein was doing business in the state of Utah. ReconTrust is a wholly-owned subsidary of Bank of America, N.A.

8. Defendant BAC Home Loans Servicing LP ("BAC") is a California company, with its principal place of business in Simi Valley, California, and at all times relevant herein was doing business in the state of Utah.

9. Defendant Bank of America, N.A. ("Bank of America"), is a Texas company, having its principal place of business in the state of California, and at all times relevant herein was doing business in the state of Utah.

10. Defendants Matheson and MMOJ regularly conduct unlawful foreclosures on trust deeds used to secure loan obligations related to Utah real property, purporting to exercise an unauthorized "power of sale" obtained and provided by ReconTrust, who is not an authorized trustee under Utah law, and on behalf of BAC and/or Bank of America.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to Utah Code Ann. § 78A-5-102.

12.     This Court retains jurisdiction pursuant to 28 U.S.C. § 1332(d)(4)(A) and (B) because, as described below, more than two-thirds of the proposed plaintiff class are citizens of the state of Utah, the primary defendants, Matheson and MMOJ, who are executing the unlawful foreclosure sales in Utah, from whom plaintiffs and the proposed class seek significant relief, are citizens of the state of Utah.

13.     Venue is proper in this Court pursuant to Utah Code Ann. § 78B-3-301.

## GENERAL ALLEGATIONS

14.     Since 2001, Defendants Matheson and MMOJ have regularly exercised and continue to exercise unlawful "powers of sale" and conduct unauthorized sales on trust deeds in the state of Utah. In particular, Matheson and MMOJ know or should know that any sale they conduct where ReconTrust is the purported trustee is not an authorized sale under Utah law because ReconTrust is not authorized to obtain, exercise or delegate power of sale under Utah's non-judicial foreclosure statutory regimen. Matheson and MMOJ violate Utah law when they exercise powers of sale purportedly provided by ReconTrust as trustee or substitute trustee.

15.     In fact, Matheson and MMOJ are the critical end players in an complex financial scheme orchestrated with ReconTrust and BAC and/or Bank of America to circumvent Utah law and take homes from Utah homeowners without giving those homeowners the opportunity to meet with a lawful trustee, as the Utah legislature required in enacting Utah's non-judicial foreclosure laws.

16.     Beginning in 2001, the Utah legislature enacted legislation to respond to a growing problem in the state: trustees on trust deeds in Utah were sending notices of default and trustee's sales to homeowners, threatening foreclosure, without giving homeowners any real

4

opportunity to resolve the issues presented by those notices with an actual person on the other side. To address this problem, the legislature enacted a statutory regimen restricting the "powers of sale" under the state's non-judicial foreclosure process to authorized trustees who have an office in the state, and with whom homeowners could meet with face-to-face. The legislative intent of the Utah law is set forth in *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1036-37 (10th Cir. 2009), which is incorporated herein by reference.

17.    In particular, Utah law provides that only "qualified" trustees, appointed as such, are given "the power of sale" and further, in addition to the normal limitations on trustees in general, as outlined at Utah Code Ann. § 57-1-21.5, only "qualified" trustees are authorized to carry out certain specific statutorily mandated processes such as the filing of a notice of default and the delivering of the notice of sale as provided in §§ 57-1-25 and 57-1-26.

18.    Consistent with the intent of the legislature, Utah law requires that trustees be, *inter alia*: an active member of the Utah State Bar who maintains a place within the state, or a title insurance company with a bona fide office in the state, where the trustor or homeowner may meet with the trustee to:

    (A) request information about what is required to reinstate or payoff the obligation secured by the trust deed;

    (B) deliver written communications to the lender as required by both the trust deed and by law;

    (C) deliver funds to reinstate or payoff the loan secured by the trust deed; or

    (D) deliver funds by a bidder at a foreclosure sale to pay for the purchase of the property secured by the trust deed.

19.     ReconTrust is not a member of the Utah State Bar or Utah title insurance company and thus not a qualified trustee under Utah law.  In exercising powers of sale purportedly obtained and delegated by ReconTrust as trustee, Matheson and MMOJ are "unauthorized persons" conducting "unauthorized sales" under Utah Code Ann. § 57-1-23.5.

20.     Defendants seek to avail themselves of the privilege of non-judicial foreclosure in Utah without the corresponding responsibility that the law imposes.

21.     In contravention of Utah law and the Utah legislature's intent, and in the ordinary course of business since 2001, defendants Bank of America and/or BAC have executed and continue to execute or cause to be executed, on behalf of Bank of America or BAC, a "Substitution of Trustee" naming ReconTrust as the trustee under the relevant deed of trust. Bank of America, BAC, and ReconTrust know or should know that ReconTrust does not qualify as a trustee under Utah law.

22.     Following the execution of the "Substitution of Trustee" naming ReconTrust as the trustee, ReconTrust imposes the non-judicial foreclosure process on Utah homeowners, filing and delivering notices of sale and default, and, most critically, Matheson and MMOJ carry out the powers of sale that ReconTrust purports to obtain by foreclosing on Utah homeowners.

23.     BAC and/or Bank of America's purpose in appointing ReconTrust as substitute trustee is to deny Utah homeowners the necessary opportunity or place to meet with a qualified trustee to request information, deliver written communications or funds, or come to a workout arrangement whereby Utah homeowners might resolve matters short of foreclosure.

24.     Were Defendants to comply with Utah Code Ann. § 57-1-20, et seq., Defendants would have to face homeowners directly and provide legitimate documentation related to their

6

loans and security documents, including having to answer questions such as who owns the original note, who is legitimately authorized to modify the terms of the note, and who is legitimately authorized to negotiate the curing of default or the re-instatement of a loan. Defendants do not want to face these questions because, often, they do not have legitimate documentations and do not know who owns the note and who is authorized to negotiate a cure of default. Defendants purposefully circumvent Utah law with their scheme to create an environment where there is nothing for Utah homeowners facing financial hardship to do but succumb to foreclosure and have their home taken from them.

25. In furtherance of the scheme, Defendants hide from homeowners critical information, documentation, and facts such as the true ownership of the relevant loans, the identity of corporate officers, the legitimacy of public records filings, etc., so that ignorant homeowners have no means of fairly negotiating, obtaining information, or intervening on their own behalf in the non-judicial foreclosure process. Under this course of operation, Defendants are enabled to unfairly and unjustly take the homes of Utah homeowners for themselves, while showing outright contempt for the rights of the homeowners and the requirements of the law.

26. Pursuant to this scheme, Defendants have conducted tens of thousands of non-judicial foreclosures illegally, having failed to comply with Utah Code Ann. § 57-1-20, et seq., and have initiated at least 750 such sales, which are presently pending in Utah.

27. Defendants have further devised and carried out their non-judicial foreclosures by engaging in a pattern of communications fraud as defined by Utah Code Ann. § 76-10-1801(1) related to false, unauthorized, illegitimate, misleading or intentionally inaccurate document filings with county recorder's officers throughout Utah. In these filings, among other things,

Defendants misrepresented and continue to misrepresent their authority to foreclose on Plaintiffs' homes, and the homes of other Utah homeowners, for the purpose of taking those properties from them.

28.     A recent consent order between Bank of America and the United States Department of Treasury factually corroborates and evidences the above allegations. There, Bank of America admitted, among other things, that it had, in "connection with certain foreclosures of loans in its residential mortgage servicing portfolio," including foreclosures in Utah:

a.     "filed or caused to be filed … affidavits executed by its employees or employees of third-party service providers making various assertions, such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records";

b.     "filed or caused to be filed … numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary";

c.     "litigated foreclosure proceedings and initiated non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time";

d.      "failed to devote sufficient financial, staffing and managerial resources to ensure

proper administration of its foreclosure processes";

e.      "failed to devote to its foreclosure processes adequate oversight, internal controls,

policies, and procedures, compliance risk management, internal audit, third party

management, and training"; and

f.      "failed to sufficiently oversee outside counsel and other third-party providers

handling foreclosure-related services."

29.      Further, on May 19, 2011, the Utah Attorney General informed Bank of America

that ReconTrust was "not in compliance" with Utah laws passed in 2001 and 2004 because

ReconTrust was not a "valid trustee." The Utah Attorney General concluded that "all real estate

foreclosures conducted by ReconTrust in the State of Utah are … illegal." The Utah Attorney

General's conclusion includes those foreclosures where Matheson and MMOJ exercised the

power of sale on behalf of ReconTrust.

30.      Defendants have profited tremendously from this complex scheme and their

blatant violations of Utah law.

## DUTCHER SPECIFIC ALLEGATIONS

31.      On or about November 7, 2007, Plaintiffs Richard and Gwen Dutcher executed a

promissory note (hereinafter, the "Dutcher Note") in favor of Countrywide Bank, FSB listed as

"Lender" on the loan documents in order to purchase the real property commonly known as 675

East 1400 North, Mapleton, Utah (hereinafter, the "Dutcher Property").

32.      On or about November 7, 2007, the Dutchers executed a Deed of Trust

(hereinafter the "Dutcher Trust Deed") for the purposes of securing the Dutcher Note. The

parties to the Dutcher Trust Deed were the Dutchers as the "Borrowers," Countrywide Bank, FSB, as the Lender, and Matheson as the then-"Trustee."

33.     Countrywide Bank, FSB purported to assign the beneficial interest under the Dutcher Trust Deed to BAC Home Loans Servicing, LP, via a document styled "Corporation Assignment of Deed of Trust/Mortgage," which was executed by David M. Gregory, Assistant Secretary, on behalf of Countrywide Bank, FSB dated February 7, 2011.

34.     On the same day, February 7, 2011, BAC purported to appoint ReconTrust as a successor trustee via a document styled "Substitution of Trustee."

35.     On the same day, Febraruy 7, 2011, at the supposed instruction of BAC, ReconTrust, purporting to act as a qualified trustee under Utah law, initiated an illegal non-judicial foreclosure on the Dutcher Property by executing a "Notice of Default and Election to Sell" and filing such notice with the Utah County Recorder on February 8, 2011.

36.     ReconTrust claimed to be the "successor" or "substitute" trustee under the Dutcher Trust Deed, even though ReconTrust knew or should have known that it did not qualify as a trustee under Utah law.

37.     ReconTrust, purporting to act as qualified trustee under Utah law, noticed an illegal non-judicial foreclosure sale of the Dutcher Property. The sale was scheduled for June 14, 2011.

38.     On June 14, 2011, ReconTrust, purporting to act as a qualified trustee under Utah law, illegally authorized a non-judicial foreclosure sale on the Dutcher Property, and Matheson, purporting to act on behalf of ReconTrust and holding himself out as an agent of ReconTrust, but

with knowledge that the sale was illegal under Utah law, conducted the non-judicial foreclosure sale at a courthouse in Utah County, Utah.

## FERGUSON SPECIFIC ALLEGATIONS

39.     On or about August 21, 2007, Plaintiffs Richard and Michelle Ferguson executed a promissory note (hereinafter, the "Ferguson Note") in connection with loan documents to purchase the real property commonly known as 4452 South 5729 West, Salt Lake City, Utah 84128 (hereinafter, the "Ferguson Property").

40.     On or about August 21, 2007, the Fergusons executed a Deed of Trust (hereinafter the "Ferguson Trust Deed") for the purposes of securing the Ferguson Note.  The Ferguson Trust Deed purportedly authorized MERS to act "solely as the nominee of Lender and Lender's successors and assigns."

41.     MERS purported to assign the beneficial interest under the Ferguson Trust Deed to BAC Home Loans Servicing, LP, via a document styled "Corporation Assignment of Deed of Trust/Mortgage," which was executed by Camelia Boone on behalf of MERS dated January 18, 2011.

42.     BAC purported to appoint ReconTrust as a successor trustee via a document styled "Substitution of Trustee."

43.     ReconTrust claimed to be the "successor" or "substitute" trustee under the Ferguson Trust Deed, even though ReconTrust knew or should have known that it did not qualify as a trustee under Utah law.

44. At the instruction of MERS and BAC, ReconTrust, purporting to act as a qualified trustee under Utah law, initiated the non-judicial foreclosure process on the Ferguson Property by recording a "Notice of Default and Election to Sell" on January 18, 2011.

45. ReconTrust, purporting to act as a qualified trustee under Utah law, noticed a non-judicial foreclosure sale of the Ferguson Property. The sale was scheduled for May 24, 2011.

46. On or about May 24, 2011, ReconTrust, purporting to act as a qualified trustee under Utah law, illegally authorized a non-judicial foreclosure sale on the Ferguson Property, and Matheson, purporting to act on behalf of ReconTrust and holding himself out as an agent of ReconTrust, but with knowledge that the sale was illegal under Utah law, conducted the non-judicial foreclosure sale at the Matheson Courthouse in Salt Lake City, Utah.

## AHLERS SPECIFIC ALLEGATIONS

47. On or about July 10, 2007, Plaintiff Catherine Richards Ahlers executed a promissory note (hereinafter, the "Ahlers Note") in favor of Meridias Capital, Inc. listed as "Lender" on the loan documents in order to purchase the real property commonly known as 5906 North Fairview Drive, Park City, Utah 84098 (hereinafter, the "Ahlers Property").

48. On or about July 10, 2007, Ms. Ahlers executed a Deed of Trust (hereinafter the "Ahlers Trust Deed") for the purposes of securing the Ahlers Note. The parties to the Ahlers Trust Deed were Ms. Ahlers as the "Borrower," Meridias Capital, Inc. as the "Lender," First American Title as the "Trustee," and MERS which purported to act "solely as the nominee of Lender and Lender's successors and assigns."

49. MERS purported to assign the beneficial interest under the Ahlers Trust Deed to Bank of New York Mellon via a document styled "Corporation Assignment of Deed of

Trust/Mortgage," which was executed by Laura Dalley on behalf of MERS dated January 10, 2011.

50.     Likewise, MERS purported to appoint ReconTrust as a successor trustee via a document styled "Substitution of Trustee" on April 28, 2009.

51.     ReconTrust claimed to be the "successor" or "substitute" trustee under the Ahlers Trust Deed, even though ReconTrust knew or should have known that it did not qualify as a trustee under Utah law.

52.     At the instruction of MERS and Bank of New York Mellon, ReconTrust, purporting to act as a qualified trustee under Utah law, initiated the non-judicial foreclosure process on the Ahlers Property by recording a "Notice of Default and Election to Sell" on April 29, 2009.

53.     ReconTrust, purporting to act as trustee under Utah law, noticed a non-judicial foreclosure sale of the Ahlers Property on January 8, 2011. The sale was scheduled for February 15, 2011. The sale was subsequently postponed and no new Notice of Sale was recorded.

54.     On or about May 24, 2011, ReconTrust, purporting to act as a qualified trustee under Utah law, illegally authorized a non-judicial foreclosure sale on the Ahlers Property, and Matheson, purporting to act on behalf of ReconTrust and holding himself out as an agent of ReconTrust, but with knowledge that the sale was illegal under Utah law, conducted the non-judicial foreclosure sale at the Summit County Courthouse in Summit County, Utah.

## CLASS ACTION ALLEGATIONS

55.     This action is brought under Utah Rule of Civil Procedure 23 on behalf of Plaintiffs and others similarly situated as described below:

13

**Class definition:** All persons subjected to the actions of Matheson, MMOJ and other defendants in non-judicial foreclosure proceedings instituted by ReconTrust, BAC, or Bank of America, as the purported trustee, in violation of Utah Code Ann. § 57-1-20 et seq., in the time period set forth as follows:

> **Subclass A**: from January 1, 2001, until May 10, 2011;
>
> **Subclass B**: from May 10, 2011, to present, and continuing through the pendency of this action.

56. Plaintiffs are similarly situated to other Utah homeowners in the putative class whose property was illegally foreclosed upon by Defendants acting without authority and in violation of Utah law.

57. Plaintiffs are unable to state the exact number of putative class without discovery of Defendants' records. However, Plaintiffs are informed and believe, and thereon allege, that the class exceeds 10,000 members. In particular, Defendants have conducted more than 250 non-judicial foreclosure sales in the state of Utah since May 17, 2010, and have more than 234 non-judicial foreclosure sales scheduled to be conducted in the coming months.

58. The proposed class is so numerous as to make joinder of all of its members impracticable.

59. Upon information and belief, more than 75% of the proposed class members are citizens of Utah.

60. There are questions of law or fact common to the proposed class. For example, the rights that are the subject of this litigation are held in common by each class member. Plaintiffs have each been foreclosed upon and in most instances dispossessed from their homes

by Defendants acting through or on behalf of ReconTrust, which lacks authority to foreclose non-judicially because it lacks the power of sale under Utah statutory law.

61.     Matheson's, MMOJ's, and ReconTrust's lack of authority to conduct non-judicial foreclosure sales in the state of Utah is an issue of law common to all members of the class.

62.     The named Plaintiffs will fairly and adequately protect the interests of the class.

63.     Counsel are competent and experienced in complex civil litigation matters, including class actions, and particularly in matters involving the Utah Trust Deed Act and the non-judicial foreclosure process in the state of Utah.

64.     The claims of the named Plaintiffs are typical of the claims of the members of the class, having been wrongfully and illegally foreclosed upon by Defendants in violation of Utah statutory law.

65.     The prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications with respect to each individual class member, which could establish incompatible standards of conduct for Defendants.

66.     Defendants, in threatening and conducting illegal foreclosures in the cases of the individual plaintiffs, and throughout the state of Utah, have acted or refused to act on grounds generally applicable to all claims, thereby making appropriate injunctive and monetary relief for all members of each class.

67.     Indeed, the adjudication of the named Plaintiffs' claims or the stated causes of action on an individual basis would, as a practical matter, be dispositive on the interests and remedies available to the citizens of Utah who are not parties to pending litigation; such individuals interests would be impaired or impeded absent a class action proceeding.

68.     The common questions of law or fact predominate over any questions affecting individual class members only.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

69.     There is no difficulty that should be encountered in the management of this litigation that would preclude its maintenance as a class action.

70.     Consequently, class certification is proper under Rule 23 of the Utah Rules of Civil Procedure.  Plaintiffs request that the class be certified as soon as possible.

### FIRST CLAIM FOR RELIEF
### (Violations of Utah Code Ann. § 57-1-23.5)

71.     Plaintiffs incorporate and reallege in full the preceding paragraphs.

72.     Utah law provides, *inter alia*, that a "trustee of a trust deed" in Utah "shall be" a person or entity that falls within at least one of six separate, highly specific qualifications detailed at Utah Code Ann. §§ 57-1-21(1)(a)(i) through 57-1-21(a)(vi).  Additionally, a trustee must have received conveyance of title by trust deed, Utah Code Ann. § 57-1-19(4), or have been appointed as "successor trustee," and the designation or appointment must be recorded "in the office of the county recorder of each county in which the trust property … is situated."  Utah Code Ann. § 57-1-22.

73.     Utah Code Ann. § 57-1-23 only confers "power of sale" on a "trustee who is qualified under Subsection 57-1-21(1)(a)(i) or (iv)."

74.     Utah Code Ann. § 57-1-21(3) provides further that "the power of sale … may only be exercised by the trustee of a trust deed if the trustee is qualified under Subsection (1)(a)(i) or (iv)."

75.     For purposes of all of the non-judicial foreclosures at issue herein, neither Matheson nor MMOJ was acting as trustee or substitute trustee on the trust deed, either because they had been substituted for or not appointed under Utah Code Ann. § 57-1-22.

76.     For purposes of all of the non-judicial foreclosures at issue herein, ReconTrust was purporting to act as trustee. In the relevant time period, ReconTrust was and is prohibited under Utah law from being a qualified trustee. Among other things, ReconTrust is not "an active member of the Utah State Bar" or a "title insurance company or agency…hold[ing] a certificate of authority or license under [Utah] Title 31A." Even if it were otherwise qualified as a trustee under Utah Code Ann. §§ 57-1-21(1)(a)(i) through 57-1-21(a)(vi), ReconTrust has not and does not "maintain[] a bona fide" "physical" office in Utah that "is open to the public" and "staffed during regular business hours on regular business days."

77.     As set forth herein, ReconTrust is not authorized by Utah law to exercise "power of sale," file notices of default, or otherwise conduct or authorize a non-judicial foreclosure sale with the contingent actions.

78.     Because ReconTrust was not authorized to obtain or exercise powers of sale, all of the non-judicial foreclosure sales conducted by ReconTrust, as trustee or substitute trustee, and Matheson or MMOJ on behalf of ReconTrust, were and are unauthorized sales, having been exercised by an unauthorized person under Utah Code Ann. § 57-1-23.5.

79.     Further, the notices of default and sale filed and recorded on Plaintiffs' properties, including the properties of the putative class, are void.

80.     Utah Code Ann. § 57-1-23.5(2)(a) provides: "An unauthorized person who conducts an unauthorized sale is liable to the trustor for the actual damages suffered by the

17

trustor as a result of the unauthorized sale or $2,000, whichever is greater." Subsection

23.5(2)(b) provides that "[i]n an action under Subsection (2)(a), the court shall award a

prevailing plaintiff the plaintiff's costs and attorney fees."

81.     Pursuant to Utah Code Ann. § 57-1-23.5, the Dutchers, the Fergusons, Ms.

Ahlers, and members of the proposed class are each entitled to damages from each defendant in

the amount of $2,000 or actual damages, whichever is greater, costs and attorney fees.

**SECOND CLAIM FOR RELIEF**
**(Violations of Utah Code Ann. § 57-1-21)**

82.     Plaintiffs incorporate and reallege in full the preceding paragraphs.

83.     In the time period in question, Defendants have conducted illegal non-judicial

foreclosure sales on property owned by Plaintiffs and the proposed class members.

84.     Defendant Matheson, purporting to act on behalf of ReconTrust and holding

himself out as an employee or agent of ReconTrust, illegally exercised the power of sale and

conducted the non-judicial foreclosure sale on property owned by Plaintiffs and the proposed

class members.

85.     These foreclosure sales were purportedly conducted pursuant to Utah law

regarding a Utah deed of trust.

86.     ReconTrust authorized and conducted the sales as the purported "successor" or

"substitute" trustee to Plaintiffs' deeds of trust.

87.     By definition, Utah law prohibits ReconTrust from acting as a trustee with respect

to Plaintiffs' deeds of trust. Because ReconTrust does not qualify under Utah Code Ann. § 57-1-

21(1)(a)(i) or (iv), it has no authority (i) to initiate non-judicial foreclosure in Utah by, among

18

other things, filing and recording notices of default and sale, or (ii) to obtain or exercise any "power of sale" or conduct or authorize non-judicial foreclosure sales under Utah law.

88. Accordingly, every non-judicial foreclosure sale conducted by Matheson, on behalf of the ReconTrust as a purported "trustee," for BAC and/or Bank of America (the purported beneficiary), and against Plaintiffs since at least 2001 was conducted in violation of Utah law. Further, the actions taken by Defendants in furtherance of illegal foreclosure sales authorized by ReconTrust as the purported "trustee" constitute a pattern of illegal and fraudulent communications.

## THIRD CLAIM FOR RELIEF
### (Conversion)

89. Plaintiffs incorporate and reallege in full the preceding paragraphs.

90. With respect to the property of the Dutchers, Fergusons, Ahlers, and each member of the proposed class, Defendants have illegally and unlawfully interfered with Plaintiffs' possession of their property.

91. Specifically, BAC and/or Bank of America appointed ReconTrust to act as a "substitute" or "successor" trustee, for the purpose of initiating and conducting illegal non-judicial foreclosure process and exercising illegal power of sale in the state of Utah, knowing that ReconTrust lacks the authority to be a qualified trustee under Utah law. As a critical component of Defendants' scheme to unlawfully interfere with Plaintiffs' possession of their property, ReconTrust, Matheson and/or MMOJ have and continue to exercise the "power of sale" illegally and conduct unauthorized non-judicial foreclosure sales of Plaintiffs' properties in violation of Utah law.

92.     As a result of the unlawful and illegal non-judicial foreclosures executed by Matheson and MMOJ, having been instituted by BAC and/or Bank of America and carried out by ReconTrust as the purported trustee, Plaintiffs, including each member of the proposed class, have been unjustly deprived of the use and possession of his and/or her property.

93.     At the time of each non-judicial foreclosure sale, Plaintiffs Dutchers, Fergusons, Ahlers, and each member of the proposed class, were entitled to immediate possession of their property: no qualified trustee had noticed a default on the class members' loan obligations and no valid trustee had conducted a foreclosure sale.

94.     Absent a valid, authorized Notice of Default, filed by a qualified trustee – as defined by Utah statute - there is no basis for the presumption that Plaintiffs are or ever were in default under the original promissory notes and therefore subject to the foreclosure terms of the corresponding trust deeds.

95.     Defendants illegally and unlawfully converted the property of Dutchers, Fergusons, Ahlers, and the members of the proposed class for their own use and in perpetuation of their financial scheme.

96.     As a result of the illegal and unlawful conversion of Dutchers, Fergusons, Ahlers, and the proposed class members' property, each has been damaged.

97.     The Dutchers, Fergusons, Ahlers, and the members of the proposed class are entitled to compensatory damages in the amount of the property illegally and unlawfully converted by Defendants, incidental damages, and, due to the egregious nature of Defendants' conduct and their willful and knowing violation of Utah law in conducting thousands of illegal non-judicial foreclosure sales in the state of Utah, punitive damages.

## FOURTH CLAIM FOR RELIEF
### (Wrongful Lien)

98.     Plaintiffs incorporate and reallege in full the preceding paragraphs.

99.     By statutory definition, the Dutchers, Fergusons, Ahlers, and the members of the proposed class are "owners" for purposes of Utah's wrongful lien statute. Utah Code Ann. §§ 38-9-1(3). The Dutchers, Fergusons, Ahlers, and the members of the proposed class are "record owners" for purposes of the lien statute because they are "owner[s] whose name and ownership interest in certain real property is recorded or filed in the county recorder's records for the county in which the property is located." Utah Code Ann. § 38-9-1(5).

100.    By statutory definition, a "wrongful lien" is any document that purports to create a lien, notice of interest, or encumbrance on an owner's interest in certain real property and at the time it is recorded is not: (a) expressly authorized by this chapter or another state or federal statute; (b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or (c) signed by or authorized pursuant to a document signed by the owner of the real property.

101.    Defendants knowingly created wrongful liens on properties belonging to the Dutchers, Fergusons, Ahlers, and the members of the proposed class by wrongfully, unlawfully, and illegally recording Notices of Default and Elections to Sell and related documents against them.

102.    The improper and unlawful Notices of Default and related documents purportedly established a notice of interest and an encumbrance on the respective properties at the time it was recorded; it affected both the title and marketability of the properties.

103. The Notices of Default and related documents were not authorized liens under Utah's lien statutes. Indeed, as described above, ReconTrust's actions as a purported "trustee" with respect to the relevant properties were contrary to Utah statutory law.

104. The Notices of Default and related documents were not authorized by or contained in an order or judgment of a court of competent jurisdiction.

105. The Notices of Default and related documents were not signed by Plaintiffs or members of the proposed class.

106. Likewise, the Notices of Default and related documents were not authorized pursuant to a document signed by the owner of the real property. The Dutchers, Fergusons, Ahlers, and members of the proposed class authorized a trustee, as defined by the Utah Trust Deed Act, to record specific documents against the property. The Dutchers, Fergusons, Ahlers, and members of the proposed class did not authorize ReconTrust, an unauthorized entity with no right to act as a trustee in Utah to come into the state and record liens on their properties.

107. In contravention of Utah law, Defendants recorded and caused to be recorded wrongful liens against real property belonging to Plaintiffs and the members of the proposed class, knowing or having reason to know that the documents either were wrongful liens, groundless, or contained material misstatements or false claims concerning Defendants' authority to foreclose on the properties and the power of sale.

108. Accordingly, the Dutchers, Fergusons, Ahlers, and members of the proposed class are entitled to actual damages proximately caused by Defendants' conduct and the wrongful liens.

109.    Defendants are further liable to the Dutchers, Fergusons, Ahlers, and the members of the proposed class "for $10,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees and costs." Utah Code Ann. § 38-9-4(3).

## FIFTH CLAIM FOR RELIEF
### (Wrongful Foreclosure)

110.    Plaintiffs incorporate and reallege in full the preceding paragraphs.

111.    As set forth above, in the relevant time period, Defendants have conducted wrongful non-judicial foreclosures on Utah homeowners, including the Dutchers, Fergusons, Ahlers, and the members of the proposed class, knowing that Defendants were not authorized by Utah law to initiate or conduct such foreclosure sales, did not have valid powers of sale, and did not intend to comply with Utah law.

112.    Defendants' actions caused harm to the Dutchers, Fergusons, Ahlers, and the members of the proposed class, in the form of an illegal taking of their home or a grossly inadequate selling price resulting from the foreclosure sales.

113.    Plaintiffs are entitled to set aside the foreclosure sales conducted by Defendants, and other damages, including punitive damages.

## SIXTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

114.    Plaintiffs incorporate and reallege in full the preceding paragraphs.

115.    Defendants' conduct towards the Dutchers, Fergusons, Ahlers, and the members of the proposed has been outrageous and intolerable.

116.    Defendants have repeatedly threatened to and have foreclosed on Utah homeowners, including the Dutchers, Fergusons, Ahlers, and the members of the proposed class,

knowing that they were not authorized by Utah law to initiate or conduct such foreclosure sales, did not have valid powers of sale, and did not intend to comply with Utah law.

117. Defendants have made these threats over the periods of months or years, causing significant emotional distress on individuals and families, including the Dutchers, Fergusons, Ahlers, and the members of the proposed class, who faced the proposition of losing their homes and residences.

118. Defendants further conspired to thwart and circumvent Utah law by denying Utah homeowners opportunity and place to meet with a qualified trustee to request information, deliver written communications or funds, or come to a workout arrangement whereby Utah homeowners might resolve matters short of foreclosure.

119. Defendants have purposefully circumvented Utah law to create an environment where there is nothing for Utah homeowners facing financial hardship to do but succumb to foreclosure and have their home taken from them.

120. Defendants have hid from homeowners, refused to provide, and refused to give opportunity and place to review critical information, documentation, and facts such as the true ownership of the relevant loans, the identity of corporate officers, the legitimacy of public records filings, etc., so that Utah homeowners have no means of fairly negotiating, obtaining information, or intervening on their own behalf in the non-judicial foreclosure process.

121. Any reasonable person would have experienced significant emotional distress as a result of the numerous, yet improper, threats made and actions taken by Defendants.

122. Defendants caused extreme emotional distress to the Dutchers, Fergusons, Ahlers, and the members of the proposed class when they repeatedly and knowingly conducted

"unauthorized" illegal sales, and proceeded to initiate proceedings to evict these individuals and families from their homes in violation of Utah law.

123. Through the above-described actions of Defendants, the Dutchers, Fergusons, Ahlers, and members of the proposed class, including individuals and families, experienced severe emotional distress.

124. The consequence of Defendants' illegal conduct is that the Dutchers, Fergusons, Ahlers, and members of the proposed class are left without places to live and reside.

125. Home ownership and/or having a place of residence is fundamental part of life in today's society and being unlawfully deprived of one's home or place of residence illegally is conduct that offends the generally accepted standards of decency and morality.

126. The illegal and unlawful actions taken by Defendants were intentional and purposeful.

127. As a result of Defendants' intentional infliction of emotional distress, the Dutchers, Fergusons, Ahlers, and the members of the proposed class are each entitled to damages, including punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that the Court award the following relief:

1. Statutory damages authorized by Utah law against each defendant on a per plaintiff basis and in favor of each Plaintiff and proposed class member, individually;

2. Actual damages to be determined at trial, and treble damages;

3. Incidental damages;

4. Punitive damages;

5.      Costs and attorneys fees;

6.      A permanent injunction preventing Defendants from conducting non-judicial

foreclosure sales in the state of Utah that do not fully comply with the requirements of the Utah

Trust Deed Act; and

7.      Any and all other relief the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on the claims set forth above.

DATED: June 24, 2011

MUMFORD WEST & SNOW, LLC

Marcus R. Mumford
Ryan R. West
Tyson B. Snow
15 West South Temple, Suite 1000
Salt Lake City, Utah 84092
Phone: 801-559-0020
Fax: 801-559-0021

*Attorneys for Plaintiffs*