IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RICHARD AND GWEN DUTCHER, RICHARD AND MICHELLE FERGUSON, and CATHERINE RICHARD AHLERS, on their own behalf and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br><br>    vs.<br><br><br>STUART T. MATHESON; MATHESON, MORTENSEN, OLSEN & JEPPSON, P.C.; RECONTRUST COMPANY, N.A.; BAC HOME LOANS SERVICING LP; and BANK OF AMERICA, N.A.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br><br><br>Case No. 2:11-CV-666 TS |

This matter is before the Court on Defendants Stuart T. Matheson; Matheson, Mortensen, Olsen & Jeppson, P.C.; ReconTrust Company, N.A.; BAC Home Loans Servicing LP; and Bank of America, N.A.'s (collectively "Defendants") Motion to Dismiss.  Also before the Court are Plaintiffs Richard and Gwen Dutcher, Richard and Michelle Ferguson, and Catherine Richard Ahlers's Motion to Remand and *Ex Parte* Application for Temporary Restraining Order and Motion for Preliminary Injunction.  For the reasons set forth below, the Court will grant

1

Defendants' Motion to Dismiss and deny Plaintiffs' Motion to Remand and *Ex Parte* Application for Temporary Restraining Order and Motion for Preliminary Injunction.

## I.  BACKGROUND

Defendant ReconTrust Co. ("Recon") is a national banking organization that has been granted fiduciary powers by the Office of the Comptroller of Currency ("OCC").  Pursuant to that power, Recon has acted as a foreclosure trustee during non-judicial foreclosure sales in Utah. Plaintiffs are Utah residents whose homes have been subject to foreclosure sales managed by Recon.

Defendant Stuart Matheson is a licensed attorney in Utah.  Defendant Matheson Mortensen Olsen & Jeppson, P.C. ("MMOJ") is a law firm located in Utah at which Mr. Matheson is employed.

In their Complaint, Plaintiffs assert six causes of action against Recon, each based on a central claim—that Recon did not have authority to conduct a trustee sale because it was not an authorized trustee under Utah law.  The six claims are: (1) violation of Utah Code. Ann. 57-1-23.5; (2) violation of Utah Code Ann. 57-1-21; (3) conversion; (4) wrongful lien; (5) wrongful foreclosure; and (6) intentional infliction of emotional distress.

## II. DISCUSSION

The National Bank Act—12 U.S.C. § 92a(a)—gives the Comptroller of Currency authority to "grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee . . . or any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with

national banks are permitted to act *under the laws of the State in which the national bank is located*."[1]  Section (b) provides that

> [w]henever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this section.

Recon has been granted authority to exercise fiduciary powers by the Comptroller of Currency. In doing so, Recon must comply with the laws of the state in which it is "located."  But to the extent those state laws allow banks, trust companies, or other institutions that compete with Recon to perform fiduciary duties, Recon is allowed to perform the same functions even if state law prohibits Recon from doing so.

The OCC has issued a regulation interpreting these provisions—12 C.F.R. § 9.7.  That regulation states that a bank is located in, and thus governed by the laws of, the state where it "acts in a fiduciary capacity."[2]  A bank "acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets."[3]

In order to decide whether Recon acted with authority in the foreclosure sales at issue here, the Court must first determine where Recon is located for purposes of the associated fiduciary relationships.  The Court then must decide whether the laws of that state permit Recon

---

[1] 12 U.S.C. 92a(a) (emphasis added).

[2] *Id.* § 9.7(d).

[3] *Id.*

to act as a foreclosure trustee, or if they permit state banks, trust companies, or institutions that compete with Recon to exercise such power.

As a threshold argument, Plaintiffs have contended that this Court lacks jurisdiction over this case because it arises under Utah state law.  Thus, the Court must first determine whether it has jurisdiction.

A.      MOTION TO REMAND

Defendants' notice of removal relies on either the Class Action Fairness Act or diversity jurisdiction as the grounds for this Court's jurisdiction.  However, a different ground for jurisdiction is found in a recent decision from this Court—*Cox v. ReconTrust Co., N.A.*[4]  In *Cox*, the Court noted that

> under [the National Banking Act], a state law claim challenging a national bank's ability to serve as trustee is completely preempted. . . . Congress intended that state law challenges to the authority of national banks to carry out specific trustee powers could be removed to federal court.
> . . . .
> [T]wo things are clear.  First, Congress intended that state law should define the limits of the trust powers that a national bank may exercise in a state.  Second, even though state law sets the limits, federal statute will ultimately be the source of the answer to the question of whether a national bank is properly exercising a state law trustee power in a state.  Because federal statute answers the controlling question, and because Congress granted the trustee powers in the first place, the court concludes that Congress intended that challenges to a national bank's activities as a trustee should be heard in federal court.[5]

---

[4]2011 WL 835893 (D. Utah Mar. 3, 2011).

[5]*Id.* at *4-5.

4

Furthermore, the Court finds that even if the issue were not properly considered a federal question, the Court would still have diversity jurisdiction because Plaintiffs have fraudulently joined the only Defendants with the potential to defeat diversity—Matheson and MMOJ.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."[6] The doctrine of fraudulent joinder provides that "joinder of a resident defendant . . . against whom there is in fact no cause of action, will not defeat removal."[7] The Tenth Circuit considered the doctrine of fraudulent joinder in the case of *Montano v. Allstate Indemnity*.[8] The court held that:

> The case law places a heavy burden on the party asserting fraudulent joinder. A representative example states: To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against the joined party in state court. In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.[9]

Accordingly, to decide whether Matheson and MMOJ were fraudulently joined, the Court must determine whether Plaintiffs have any chance of recovering against them. If there is such a chance, then Matheson and MMOJ are not fraudulently joined and the Court would not have diversity jurisdiction in this case.

---

[6]*Purdy v. Starko, Inc.*, 2010 WL 3069850, at *2 (D. Utah Aug. 4, 2010) (quoting *Kan. State Univ. v. Prince*, 673 F. Supp. 2d 1297, 1294 (D. Kan. 2009)).

[7]*Roe v. Gen. Life Ins. Co. & Phillips Petroleum Co.*, 712 F.2d 450, 452 (10th Cir. 1983) (citing *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

[8]211 F.3d 1278 (10th Cir. 2000) (unpublished).

[9]*Id*. at *1 (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)).

5

Plaintiffs claim that, beyond their role as agents for Recon, Matheson and MMOJ are independently liable for their "intentional torts and violations of Utah statutory law." As to the Utah statutory claims, the Court finds that Matheson and MMOJ were acting as agents for Recon, which purported to be the successor trustee, and thus were not truly exercising the "power of sale." Instead, Recon was exercising the power of sale through its agents. As the Utah Supreme Court noted in *Oxendine v. Overturf*,[10] it is well established that "an attorney [cannot] be held liable to a non-client absent fraud, collusion or privity of contract."[11] Thus, there must be some showing of independent misbehavior on Matheson or MMOJ's part, apart from their execution of their principal's wishes.

Plaintiffs have alleged a fraud/collusion claim, but have not supported it with adequate allegations. Plaintiffs state that it is "clear that Matheson and MMOJ have colluded with the other Defendants to do something forbidden by Utah law," that they "knew that Bank of America and ReconTrust were acting as the designated successor trustees without complying with Utah law," and that they are "the critical end players in a complex financial scheme orchestrated with ReconTrust and BAC and/or Bank of America to circumvent Utah law and take homes from Utah homeowners."[12] None of these statements is supported by a citation to the record. Such conclusory language, no matter how strong or how pervasive, will not suffice on its own.

---

[10]973 P.2d 417 (Utah 1999).

[11]*Id.* at 421. The *Oxendine* court did recognize that the rule has ben slightly relaxed, but only to the extent that some third parties to an attorney client relationship may have a cause of action if it is clear that the attorney client agreement was intended to benefit the third party.

[12]Docket No. 33, at 3-4.

Completely absent from Plaintiffs' submissions is any factual material showing some intent, independently held by Matheson and MMOJ, to engage in a business they knew was contrary to law or fraudulent.  While it is the case that an independent fraud claim could be brought against a party such as Matheson or MMOJ if there was factual support, here the complete lack of supported allegations suggests that Plaintiffs were more interested in defeating diversity than pleading an adequate claim.

In light of the above, a claim against Matheson and MMOJ based on either tort or Utah law must fail.  It follows that both parties were fraudulently joined and thus cannot defeat diversity.  Therefore, based on either federal question or diversity jurisdiction, the Court will deny Plaintiffs' Motion to Remand.

B.      MOTION TO DISMISS

Because the argument that Recon is not authorized to act as foreclosure trustee is central to Plaintiffs' claims, the Court must determine which state's law it should apply in deciding whether Recon had such authority.  "[T]he state laws that apply to a national bank's fiduciary activities by virtue of 12 U.S.C. 92a are the laws of the state in which the bank acts in a fiduciary capacity."[13]

A national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets.  If these activities take place in more than one

---

[13]12 C.F.R. § 9.7(d).

> state, then the state in which the bank acts in a fiduciary capacity for section 92a
> purposes is the state that the bank designates from among those states.[14]

Thus, in this case, if Recon accepted its appointment as trustee in Utah, executed the substitution

of trustee documents in Utah, and made decisions about trust assets in Utah, then Utah law

applies.  Recon argues, however, that all such activity took place in Texas, and therefore Texas

law should apply.  The Court must determine where Recon is located.  Once that determination is

made, only the law of the location state applies.  "Except for the state laws made applicable to

national banks by virtue of 12 U.S.C. 92a, state laws limiting or establishing preconditions on the

exercise of fiduciary powers are not applicable to national banks."[15]

The issue of which state law applies to Recon's foreclosure trusteeships in Utah has now

been considered by three different judges in this Court, and their conclusions have varied.  In

*Cox*, the court held that Utah law applied.  Based on "a straight forward reading of § 92a(b),"[16]

*Cox* rejected the authorities that Recon relied on (which are largely the same authorities Recon

relies on in the instant case) as inapplicable because they "contemplate a bank providing trust

services to banking customers in a certain state, but acting in several states as part of providing

those services.  Here, in contrast, ReconTrust is conducting foreclosure activities on behalf of

Bank of America in several states, including Utah.  Defendants' authorities are therefore not

---

[14]*Id.*

[15]*Id.* § (e).

[16]2011 WL 835893, at *6.

persuasive."[17]  *Coleman v. ReconTrust Co.*, decided a short time later, relied on *Cox* to reach the same conclusion.[18]

In *Garrett v. ReconTrust Co.*,[19] the court came to the opposite conclusion.  Relying on the same statute and interpretive regulation, the court reasoned:

> Section 92a of the NBA ties the state law at issue in this case to where the national bank is "located."  Additionally, the OCC has interpreted that phrase to mean a national bank is "located" only where it "acts in a fiduciary capacity."  ReconTrust performs all fiduciary duties at issue in this case in Texas.  The OCC regulations define acting in a fiduciary capacity as "the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets."
>
> Here, ReconTrust performs the functions specified in this regulation for Utah properties in Texas.  Therefore, the state laws that apply to ReconTrust by virtue of Section 92a are those of Texas, rather than Utah.  Since Texas law permits national banks to act as trustee under the deeds of trust and to exercise the power of sale with regard to such deeds of trust ReconTrust is not "acting in contravention of State Law" of the state in which it is "located" for purposes of 12 U.S.C. § 92a and 12 C.F.R. § 9.7 when it performs trustee sales with respect to Utah properties.[20]

This Court must now determine which analysis to adopt.  In so doing, the Court notes that this is a close issue.  However, having fully considered the cases, as well as the arguments advanced by the parties, the Court finds that the reasoning of *Garrett* more persuasive.  Both the language of 12 C.F.R. § 9.7 and the collection of post § 9.7 OCC opinion letters on the issue indicate that Texas law should inform the application of the NBA to Recon in this case.

---

[17]*Id.*

[18]Docket No. 37 Ex. A.

[19]2:11-cv-763, Docket No. 9.

[20]*Id.* at 3-4 (citations omitted).

In an OCC opinion letter issued in 2008, the OCC clarified that a bank's location is determined with reference to the specific fiduciary relationship in question:

> the relevant law is the law of the state in which the national bank acts, or proposes to act, in a fiduciary capacity. . . . [T]he state in which the bank acts in a fiduciary capacity for any given fiduciary relationship is the state in which the bank performs the core fiduciary activities of accepting fiduciary appointments, executing documents that create the fiduciary relationship, or making decisions regarding the investment or distribution of fiduciary assets. For each fiduciary relationship, a national bank will refer to only one state's laws for purposes of defining the extent of its fiduciary powers pursuant to Section 92a.[21]

Thus, for each deed of trust in question here, the Court must determine where Recon was performing the relevant fiduciary acts. This location is not determined by where the customer resides or where the property that is subject to the deed of trust is located: "once the state in which a [trust company] is acting in a fiduciary capacity is identified, the fiduciary services may be offered regardless of where the fiduciary customers reside or where the property that is being administered is located."[22] Thus, the physical location of the foreclosure sale managed by Recon is not in itself indicative of Recon's "fiduciary location."

Relying on *Cox*, Plaintiffs argue the OCC letters are inapplicable to Recon because they "contemplate a bank providing trust services to banking customers in a certain state, but acting in

---

[21]OCC Interpretive Letter 973, Docket No. 19 Ex. H, at 3.

[22]OCC Interpretive Letter 1103, Docket No. 19 Ex. G, at 3. *See also* OCC Interpretive Letter 1106, Docket No. 19 Ex. K, at 2-3 ("Once the state in which a national bank is acting in a fiduciary capacity is identified, the fiduciary services may be offered regardless of where the fiduciary customers reside or where property that is being administered is located . . . . [W]ith the exception of those state laws specifically referenced in Section 92a, any state laws limiting or establishing preconditions on the exercise of fiduciary powers by a national bank are not applicable to national banks.").

several states as part of providing those services.  Here, in contrast, ReconTrust is conducting foreclosure activities on behalf of Bank of America in several states, including Utah."[23]  Recon may be both "acting in a fiduciary capacity" and foreclosing in Utah, in which case the language Recon relies on in the OCC letters would not be applicable.  Conversely, it may be that Recon is acting in a fiduciary capacity in Texas and merely servicing that relationship by conducting foreclosure sales in Utah.  In such a case, the language clearly would apply.  However, before making such a determination, the key facts relevant to Recon's location as to these fiduciary relationships must be analyzed.  By merely stating that the language is inapplicable without engaging in such an analysis, Plaintiffs have put the cart before the horse.[24]

To determine where Recon is located as to the fiduciary relationships in question, the Court must ascertain: (1) where Recon accepted its fiduciary appointment; (2) where Recon executed the documents creating the relationship; and (3) where Recon makes its discretionary decisions regarding the investment or distribution of the fiduciary assets.[25]  Several documents submitted by Recon are helpful on this point.  The substitution of trustee documents as to these properties were signed by the beneficiary bank in Texas, and Recon lists a Texas address for

---

[23]*Cox*, 2011 WL 835893, at *6.

[24]Plaintiffs also argue that OCC Letter 695 contradicts Recon's position.  Whatever the proper interpretation of this letter may be, the letter was written in 1995, six years before 12 C.F.R. § 9.7(d)—the provision that definitively addresses the issue of location—was promulgated. Accordingly, it should not be read to contradict later letters that address the issue of location relying on § 9.7(d).

[25]12 C.F.R. § 9.7(d).

return mail.[26]  Furthermore, the notices of default executed by Recon were signed and notarized

in Texas and had Texas return addresses.[27]  These facts are uncontested and tend to establish that

Recon was making its foreclosure decisions, as well as accepting its appointments, in Texas.

Considering the same facts, *Garrett* reached the same conclusion.

   In response, Plaintiffs have alleged no contrary facts bearing on where the relevant events

took place.  Rather, they have placed their faith in fervent repetitions of the conclusion that

Recon was acting as a fiduciary in Utah.  This leaves the Court with the sole fact that Recon

exercised the power of sale in Utah, which is far from determinative.  Given that the parties

arguments arise in the context of a motion to dismiss, the Court's role is to determine whether,

assuming all Plaintiffs' allegations are true, Plaintiff has stated a plausible claim for relief.[28]

Because Plaintiffs have offered no evidence indicating that Recon accepted its appointment,

executed the acceptance documents, or made fiduciary decisions in Utah, the Court finds that

Plaintiffs' accusations are "'naked assertion[s]' devoid of 'further factual enhancement,'"[29] and

thus fatally insufficient.  Accordingly, the Court finds that Recon was located in Texas as to the

fiduciary relationships in question here.

   Having determined that Recon is located in Texas, the Court must now determine

whether Recon has complied with Texas law, and only Texas law—any purported violation of

---

[26]Docket No. 19 Ex. D.

[27]*Id.* Ex. E.

[28] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[29] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

Utah law is thus irrelevant at this stage.[30]  Plaintiffs do not dispute that Texas law allows Recon

to act as a foreclosure trustee.  Furthermore, *Garrett* concluded that Texas law authorized Recon

to do so: "Texas law permits national banks to act as trustee under the deeds of trust and to

exercise the power of sale with regards to such deeds of trust."[31]  Accordingly, the Court finds

that Recon did not violate Texas law by acting as foreclosure trustee in Utah and has therefore

not violated sections 92a(a) or (b) of the NBA.

Furthermore, even if Texas law does not apply, the Court finds that Recon has still acted

in compliance with the NBA.  As noted above, the NBA allows the Comptroller of Currency to

authorize national institutions to perform trust duties in a state as long as (1) not in contravention

of state law and (2) the state allows state banks, trust companies, or other companies that

compete with national banks to exercise those powers.[32]  The Act goes on to state that

> [w]henever the laws of such State authorize or permit the exercise of any or all of
> the foregoing powers by State banks, trust companies, or other corporations which
> compete with national banks, the granting to and the exercise of such powers by
> national banks shall not be deemed to be in contravention of State or local law
> within the meaning of this section.[33]

---

[30]12 C.F.R. § 9.7(e) ("Except for the state laws made applicable to national banks by
virtue of 12 U.S.C. 92a, state laws limiting or establishing preconditions on the exercise of
fiduciary powers are not applicable to national banks.").

[31]*Garrett v. ReconTrust Co.*, 2:11-cv-763, Docket No. 9, at 3.

[32]12 U.C.A. § 92a(a).

[33]*Id.* § (b).

Utah law allows title companies and attorneys to act as non-judicial foreclosure trustees.[34] Accordingly, if title companies or attorneys compete with national banks, then Recon is entitled to exercise the same power, even if Utah state law expressly forbids it.

The Court finds that Utah title companies compete with Recon.  Recon holds itself out as a provider of foreclosure trustee services in Utah, as is readily obvious from the fact that the basis for this suit is Recon's provision of those services.  It follows that a Utah title company that offers the same services is in direct competition with Recon.  Accordingly, Recon is entitled to the same privileges as a Utah title company.  Plaintiffs' argument that Recon does not compete with title companies because federal law prohibits national banks from selling title insurance assumes too broad a definition of "compete."  The Court does not read "compete" to require competition between two entities in every aspect of their business, or even in their primary businesses.  Rather, the Court finds that "compete" should be given its ordinary definition: an attempt by two or more parties, engaged in the same activity, to exceed each other's performance.[35]  While one party may spend most of its time playing baseball, another football, and another basketball, whenever the three get together for badminton, they are properly described as badminton competitors.  In the same manner, whatever Recon's or Utah title companies' other activities, when drumming up foreclosure trustee business, they are "in competition."

---

[34]Utah Code Ann. § 57-1-21(3).

[35]*See* The New Oxford American Dictionary 354 (3d ed. 2010) (defining "compete" as "strive to gain or win something by defeating or establishing superiority over others who are trying to do the same").

14

There is some question as to whether a finding that Recon competes with Utah title companies (a) merely entitles Recon to perform trustee sales in Utah but does not excuse it from the responsibilities imposed upon its competitors by Utah Code Ann. 57-1-21 or (b) grants Recon blanket authority to perform trustee sales regardless of the state law requirements for doing so. Under § 57-1-21, a title company is only permitted to exercise the power of sale if it "(A) holds a certificate of authority or license under Title 31A, Insurance Code, to conduct insurance business in the state; (B) is actually doing business in the state; and (C) maintains a bona fide office in the state."[36]

In resolving this issue, the Court finds that the NBA's use of the word "exercise" is telling.  The statute authorizes "the *exercise*" of trust powers by a national bank as long as a national bank competitor is granted the same powers.  Exercise, used as a verb, means "use or apply (a faculty, right, or process)."[37]  The word thus sweeps in both the right to the power (use) as well as the mode of its execution (application).  In other words, the NBA allows banks not just the privilege to exercise trust power, but also deems the manner of its exercise to be "not in contravention of state law."[38]  Thus, Recon is not violating Utah Code Ann. § 57-1-21 by either (1) performing trustee sales or (2) failing to comply with the requirements imposed on Utah title companies performing such sales.

---

[36]Utah Code Ann. § 57-1-21(1)(a)(iv), (3).

[37]The New Oxford American Dictionary 606 (3d ed. 2010).

[38]12 U.C.A. § 92a(b).

Accordingly, the Court finds that regardless of whether the NBA incorporates Utah or Texas law, Recon has not operated beyond the law by acting as a foreclosure trustee in Utah.

So holding dispenses of all six of Plaintiffs' claims.  Plaintiffs' first two claims are based on an application of Utah trust law.  Because Texas law applies, Utah law is irrelevant.  Furthermore, even if Utah law were to apply, it would only apply as incorporated through the NBA.  Plaintiffs' state trust law contentions would thus be irrelevant in the face of the Court's finding that Recon has not violated the NBA.  Plaintiffs' conversion, wrongful lien, and wrongful foreclosure claims are predicated on the theory that Recon had no authority to act as foreclosure trustee under Utah trust law, and are thus similarly futile.  Finally, Plaintiffs' intentional infliction of emotional distress claim fails because it is based on Plaintiffs' theory that the Defendants colluded to engage in criminal behavior, and that this criminal behavior was "extreme and outrageous."  This theory, tenuous as it is to start, crumbles upon a finding that Defendants' actions were authorized by law.  Accordingly, the Court will grant Defendants' Motion to Dismiss as to all claims.

C.     OTHER MOTIONS

Plaintiffs have also filed a motion for a temporary restraining order and/or preliminary injunction prohibiting Recon from engaging in foreclosure trustee activities in Utah, as well as a motion for class certification for those similarly situated to Plaintiffs.  In light of the analysis above, both motions are moot and therefore the Court will deny them.

16

III.  CONCLUSION

In light of the foregoing, the Court will grant Defendants' Motion to Dismiss, deny

Plaintiffs' Motion to Remand, and deny Plaintiffs' *Ex Parte* Application for Temporary

Restraining Order and Motion for Preliminary Injunction as moot.  The hearing set for this matter

is stricken.  It is therefore

ORDERED that Plaintiffs' Motion to Remand (Docket No. 20) is DENIED. It is further

ORDERED that Defendants' Motion to Dismiss (Docket No. 18) is GRANTED. It is

further

ORDERED that Plaintiffs' *Ex Parte* Application for Temporary Restraining Order and

Motion for Preliminary Injunction (Docket No. 25) and Plaintiffs' Motion to Certify Class

(Docket No. 28) are DENIED AS MOOT.  The Clerk of the Court is directed to close this case

forthwith.

DATED   February 8, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge

17