JERROLD JENSEN (1678)
Assistant Utah Attorneys General
MARK SHURTLEFF (4666)
Utah Attorney General
Attorneys for Defendant Mark Shurtleff
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah  84114-0856
Telephone: (801) 366-010
jerroldjensen@utah.gov

---

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICHARD AND GWEN DUTCHER, RICHARD AND MICHELLE FERGUSON, and CATHERINE RICHARD AHLERS, on their own behalf and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>STUART T. MATHESON; MATHESON, MORTENSEN, OLSEN & JEPPSON, P.C.; RECONTRUST COMPANY, N.A.; BAC HOME LOANS SERVICING LP; and BANK OF AMERICA, N.A.,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**<br><br><br>Case No. 2:11-cv-666 TS<br><br>Judge Ted Stewart |

Plaintiff in Intervention, State of Utah, having moved pursuant to Rule 24(b)(2) of the

Federal Rules of Civil Procedure for Permissive Intervention, respectfully submits this

Memorandum in Support of its Motion to Intervene, and in support of Plaintiffs' Motion to Alter

or Amend this Court's Judgment of February 8, 2012, pursuant to Rule 59 of the Fed. R. of Civ. Pro.

## INTRODUCTION AND FACTUAL BACKGROUND

Given that Utah is a non-judicial foreclosure State, most real estate foreclosures occurring in Utah never see the inside of a courtroom. But in the last couple of years, as the number of foreclosures has escalated, there has been an increasing interest among homeowners who believe they have been wronged by their lender or mortgage servicer to challenge these foreclosure actions in court. For the most part, the State of Utah has taken a hands-off policy as to these court actions. But this court's February 8, 2012 ruling that Utah's trustee statute, Utah Code § 57-1-21, is preempted by Texas law, is not something the State of Utah can let pass without apprising the Court of how such a ruling is in conflict with the National Bank Act ("NBA").

In 2001 the Utah Legislature amended Utah's trustee statute to limit the "power of sale" of trustees conducting foreclosure sales in the State of Utah to members of the Utah State Bar or title insurance companies with offices in the State. Given that most holders of mortgages in this State are located out-of-state, the purpose of the statute was to give homeowners facing foreclosure the opportunity to meet with someone representing the mortgage holder face-to-face. That was to be accomplished by requiring the trustee of the trust deed conducting the foreclosure to have an office in the State. The statute was challenged, and declared unconstitutional by this Court. *See Kleinsmith v. Shurtleff*, No. 2:01-cv-00310 TS, slip op. (D.Utah Aug. 13, 2001). In reaction to this Court's ruling, the Legislature amended the statute again in 2002. This amendment was also challenged and held unconstitutional by this Court. *Kleinsmith v. Shurtleff*,

2:03-cv-63 TC, slip op. (D.Utah July 3, 2003). In response, the Utah's Legislature amended the statute a third time in 2004. This amendment was also challenged by Mr. Kleinsmith, but this time the Legislature finally got it right and this Court upheld the constitutionality of the statute. The case was appealed to the Tenth Circuit – which also upheld the constitutionality of the statute. *Kleinsmith v. Shurtleff*, 571 F.3d 1033 (10th Cir. 2009). In so doing, the Court said: "Making it easier for Utahns to meet with trustees, who play a pivotal role in non-judicial foreclosures, is a legitimate state interest." *Id*. at 1048.

It is this "legitimate state interest" that drives the State's motion to intervene in this case. Utah takes very seriously how foreclosure actions are conducted on homes of the citizens in this State. And while it is the position of ReconTrust that Utah law does not apply to foreclosures it conducts in the State of Utah, such position is not consistent with § 92a of the National Bank Act, 12 U.S.C. § 92a, nor is it consistent with how the agency that regulates national banks, the Office of the Comptroller of the Currency ("OCC"), interprets § 92a either.

Because the State of Utah does not get involved in every foreclosure action that goes to court, it had no reason to pay any more attention to this case than any of the other numerous foreclosure cases that are filed. Only when this court declared that Utah's statute is preempted by Texas law did the State become alarmed about defending the integrity of its trustee statute and in preserving Utah citizens in their homes.

On that basis, the State of Utah seeks permission to intervene in this case as a party plaintiff.

**ARGUMENT**

**I.     RULE 24(B)(2) ALLOWS PERMISSIVE INTERVENTION BY A GOVERNMENT OFFICER OR AGENCY.**

Rule 24(b)(2) of the Federal Rules of Civil Procedure provides:

> By a Government Office or Agency.  On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
>
> (A) A statute or executive order administered by the officer or agency; or
>
> (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

Intervenor seeks permissive intervention on the basis that its claim is based upon this court's interpretation of 12 U.S.C. § 92a(a) of the National Bank Act ("NBA") as it applies to the Utah trustee statutes, Utah Code §§ 57-1-21 and 57-1-23.  Federal courts have held that Rule 24(b)(2) is  to be liberally construed.  *Degrafinreid v. Ricks*, 417 F.Supp.2d 403, 407 (D.N.Y. 2006), ("Intervention under [Rule 24(b)] is permitted in the discretion of the district court.  Within this discretion, courts have held that Rule 24(b)(2) is to be liberally construed.")  More specifically, the 10th Circuit follows "a somewhat liberal line in allowing intervention." *WildEarth Guardians v. National Park Service*, 604 F.3d 1192, 1198 (10th Cir. 2010) quoting *WildEarth Guardians v. USFS*, 573 F.3d 992, 995 (10th Cir. 2009).  In exercising its discretion, the court should "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990).

Rule 24(b) requires that a motion to intervene be timely.  "Whether a motion to intervene is timely is determined in light of all of the circumstances."  *New Century Bank v. Open Solutions, Inc*.,  No. 10-6537, slip op. at 2 (D. Penn. 2011).  Federal courts generally determine the timeliness of motions to intervene by examining three main factors: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *New Century Bank ,* No. 10-6537, slip op. at 2.  However, the Supreme Court has held that "entry of judgment does not necessarily make a motion to intervene untimely if a government agency seeks to represent the public interest by demonstrating "an improper exercise of the court's jurisdiction." *Id*.

In *New Century Bank v. Open Solutions* the Federal Deposit Insurance Corporation ("FDIC") filed a motion to intervene as a party under Rule 24 after judgment was already entered.  The FDIC asserted that it did not intervene until that time because "only at that point did the court interpret the contract between the FDIC and Customers in a manner the FDIC considers adverse to its interests."  *New Century Bank*, No. 10-6537 at 2.  The court held that although the FDIC could have moved to intervene sooner, its motion was still timely under Rule 24 because the issue was of public importance.

Similarly, Utah's Motion to Intervene is timely because only at the point that this Court interpreted the National Bank Act in a manner that the State considers adverse to the interests of citizens of this State, did the State have reason to be concerned.  With the thousands of foreclosures going on in the State, a ruling by this Court that Utah's trustee foreclosure statute is preempted will have a significant impact on homeowners in the State.  Given the State's and the

public's interest in preventing wrongful foreclosures, the State believes its Motion to Intervene should be granted.

## II.     THE LEGAL CRITERIA FOR A MOTION FOR RECONSIDERATION.

One of the standards warranting a Motion to Reconsider is the "need to correct clear error." *Servants Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2005), citing *Brumark Corp. v. Samson Resources Corp.,* 57 F.3d 941, 948 (10th Cir. 1991).  Plaintiff in Intervention, State of Utah, asserts that this Court's holding in its Order of February 8, 2012 in this case is a matter of "clear error."  This court has misapprehended the controlling law for the qualification of trustees of trust deeds as set forth in § 92a of the National Bank Act, and thus a Motion for Reconsideration is appropriate.  *Id.*

The State of Utah agrees with this Court that the National Bank Act preempts State law, but believes that this Court has made a clear error in its apprehension of the "State law condition" or "contravention provision" of § 92a of the National Bank Act.  In short, § 92a provides that national banks exercising fiduciary powers in a State are subject to the laws of that State in which they conduct their fiduciary activities.  This Court has determined that even though ReconTrust is conducting its fiduciary activities in Utah, Utah law does not apply.  That is a "clear error" and misapprehension of the National Bank Act.  12 U.S.C. § 92a.

The State of Utah has a substantial and compelling interest in preserving the integrity of its statutes.  Preemption of State law by the federal government is one thing, but preemption of

State law by other States is entirely something else.  Texas does not pass banking laws for Utah. And Utah does not pass banking laws for Texas.

Further, the State has a substantial and compelling interest in protecting its citizens in their homes, including protecting them from the harms of unscrupulous "foreclosure mills."

As the recent $25 billion Foreclosure Settlement between 49 States (including Utah) and the five largest mortgage servicers (of which Bank of America is the largest) makes clear, the mortgage foreclosure business is fraught with abuse, fraud, and unacceptable nationwide mortgage servicing practices.  The Utah Attorney General's Office receives hundreds of complaints a month against mortgage servicers.  Approximately 75-80% of those complaints are against Bank of America and ReconTrust.

By moving to intervene in this case, the State of Utah is attempting to correct the holding of this Court by providing an objective analysis of the meaning and significance of § 92a of the NBA relating to the fiduciary powers exercised by national banks.  The State is not attempting to take sides with the Plaintiff or Defendant in this case as to the merits of Plaintiffs' particular fact situation.  The State is only interested in protecting the laws of the State of Utah.

In June, 2011, the State of Utah came to an understanding with Bank of America that ReconTrust would cease operations in the State.  Bank of America agreed that ReconTrust would cease operating in the State if the State would not file suit against Bank of America and ReconTrust.  The State agreed to that proposal.  It was simple and immediate.  Bank of America did not want to get into a lawsuit with the State – and for good reason: ReconTrust is not a qualified trustee in the State of Utah.  But if this Court holds that ReconTrust is a qualified

trustee then it opens the door for ReconTrust to return to the State and continue its abuses of Utah citizens.

**III.    WHERE A BANK IS "LOCATED" – AS THAT TERM IS USED IN THE NATIONAL BANK ACT – IS WHERE IT IS CONDUCTING ITS FIDUCIARY ACTIVITIES.**

While the National Bank Act ("NBA") originates from legislation passed in 1864, the fiduciary powers provision currently in § 92a of the Act originated in the Federal Reserve Act of 1913.  Pub. L. No. 63-43, 11(k), 38 Stat. 251, 262 (1913).  It was amended in 1918 and has remained unchanged ever since.  *See* Pub. L. No. 65-218, 2, 40 Stat. 967, 968-69 (1918).  In 1962 Congress transferred the administration of the fiduciary powers of national banks from the Federal Reserve Board to the Office of the Comptroller of the Currency.  *See* Pub. L. No. 87-722, 76 Stat. 668 (1962) (codified at 12 U.S.C. 92a).

Section § 92a(a) of the National Bank Act provides:

> The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefore, *when not in contravention of State or local law,* the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.

12 U.S.C. § 92a(a) (emphasis added).

ReconTrust has argued to this Court that while ReconTrust may be subject to State law, as provided in § 92a(a), it is the State law of the State in which the bank is "located," and since

ReconTrust has a physical office in Texas which administers foreclosures in Utah, Texas law applies to foreclosure transactions ReconTrust conducts in Utah.

There are numerous problems with this theory.

### A.   THE SUPREME COURT HAS HELD THAT THE TERM "LOCATED" AS USED IN THE NATIONAL BANK ACT HAS NO ENDURING RIGIDITY AS CLAIMED BY RECONTRUST.

In 1977 the United States Supreme Court had occasion to interpret the meaning of the word "located" as used in § 94 of the NBA.  This was not dicta, but rather the definition of the term was at the heart of the case.  As the Court said, "the dispute obviously centers in the word 'located' as it is employed in the statute." *Citizens and Southern National Bank v. Bougas,* 434 U.S. 35, 36 (1977).   The bank in *Bougas* took the position that it had to be sued where is was "located," and that meant where it physically had an office.  Plaintiff took the position that the suit could be brought against the bank where it conducts its business.

The Supreme Court opinion addresses the history of the NBA, noting that "at the time the 1864 Act was passed, the activities of a national bank were restricted to one particular location," *id.* at 42, and that when Congress formulated the NBA it "did not contemplate today's national banking system." *Id.* at 43.  Then the Court reviewed numerous court opinions interpreting the word "located" as applied to national banks and concluded by rejecting the bank's argument that a bank could not be "located" in "a plurality of places." *Id.* at 45.  In coming to that conclusion the Court stated that "[t]here is no enduring rigidity about the word 'located'" as used in § 94 of the NBA. *Id.* at 44.

In like manner, when the language of § 92a was written in 1913, banks were in fact "located" in one place.  That is, they did business and operated pursuant to their charter at one location.  National banks did not have branches in 1913, let alone operate numerous bank offices in multiple States.  Therefore, using the phrase in § 92a "where the bank is located" made perfectly good sense then.  The Supreme Court, however, has held that such "rigidity" is not to be used when interpreting the term "located" in the National Bank Act today.

**B.     THE OCC HAS INTERPRETED "LOCATED" AS USED IN § 92a TO INCLUDE A LOCATION WHERE A BANK IS "DOING BUSINESS."**

The OCC uses "interpretive letters" to address specific legal issues asked of them by national banks.  Interpretive Letters ("IL") are not law, but do express the legal opinion of the OCC, which is the governing agency for national banks.  In 1995, Banc One asked the OCC what State's fiduciary law applied to the various "limited purpose trust offices" the bank was opening in multiple states.  Given that § 92a said that it was where the bank was "located," Banc One asked if that meant where it was headquartered, where it had branches, or where it did business?  IL 695 addresses that issue. 1996 WL 187825.

IL 695 is an 18-page legal opinion in which the OCC goes to great lengths to describe the authority of a national bank to conduct fiduciary activities in multiple States.  In short, the letter stands for two propositions: (1) "Section 92a authorizes a national bank that has been granted fiduciary powers to exercise those powers in any state, *provided that within each state, the state may bar the exercise of such fiduciary powers as the state also does not allow for its own state-chartered institutions*." *Id*. at *1 (emphasis added).  And, (2) a bank is "considered *present* in

each state – through a branch, another type of office, *or merely doing business* – and treated

under the statute in the same manner as any other national bank in the state." *Id.* at *13

(emphasis added).

### 1. The Meaning of the Contravention Provision/State Law Condition.

"[W]hen not in contravention of State or local law" is the provision in § 92a(a) and (b)

that the OCC variously calls the "State law condition" or the "contravention provision." The

OCC says that it means that if a State does not permit its own State institutions to exercise

certain fiduciary powers, then the national banks operating in that State are not authorized to

exercise those fiduciary powers in that State.  As stated by the OCC, "[s]ection 92a does not limit

the application of this principle only to national banks whose main office is in the state in

question." *Id.* at *4.   As the OCC said: "We discern no basis in the statutory language to apply

section 92a in a different manner to a national bank's proposed trust office or other proposed

fiduciary business in a state depending upon whether the national bank also has its main office in

that state or not." *Id.* at 4.

The Comptroller continues

> the effect of section  92a is that in any specific state, the
> availability of fiduciary powers is the same for out-of-state national
> banks as it is for in-state national banks, and is dependent upon
> what the State permits for its own State institutions.
> A state may limit national banks from exercising any or all
> fiduciary powers in that state, but only if it also bars its own
> institutions from exercising the same powers.  Therefore, a national
> bank with its main office in one state (such as the proposed trust
> bank) *may conduct fiduciary business in that state and other states,*
> *depending upon – with respect to each state – whether each state*
> *allows its own institutions to engage in fiduciary business.*

*Id.* at *4 (emphasis added).  This is critical language as it pertains to this case because it states the precise opposite of what ReconTrust has stated to this Court is the meaning of the OCC's regulations.  Here, the OCC is stating that the purpose of State law condition in §92a is to permit a national bank to conduct its fiduciary business under the same laws that the State in which it is operating allows its State-chartered banks to conduct their fiduciary business.

This concept is known as "competitive equality," (to be discussed below).

**2.   A Bank is Present in a State if it is Merely Doing Business in that State.**

Specifically addressing the very issue ReconTrust raises in this case, the OCC says in IL 695 that a national bank *merely doing business* in a State is considered "present" in that State and therefore subject to the laws of that State.  In discussing the term "located," as used in § 92a, the OCC is very clear in IL 695 that Congress did not intend that the provisions of § 92a would mean that a national bank could attach itself to one State and then have that State's laws follow that bank wherever it operated nationwide.  As the OCC states:

> Thus, in our view, with respect to a national bank that proposes to offer fiduciary services in more than one state, *section 92a applies equally for each and every state.*  The use of a singular term in section 92a ("whenever the laws of such state . . ."; "the laws of the state in which the bank is located") *does not imply that Congress intended that the provisions of section 92a would apply only to one state for each national bank.*

*Id.* at *12 (emphasis added.)

In IL 695 the OCC authoritatively states that a bank exercising fiduciary duties is subject to the law of the State in which it is conducting those fiduciary activities.  Key to that understanding is the following:

> Thus, section 92a authorizes national banks to offer fiduciary services in multiple states, but *then conditions the exercise of that power within each state on a state-by-state basis* under the same test: is the exercise of fiduciary powers by national banks prohibited by state law, and even if it is, does that state permit its state institutions to exercise these powers or not.  This result is consistent with other banking statutes that treat a single national bank as present in different states for purposes of that statute.

*Id.* at \*12 (emphasis added).

Citing a half-dozen court cases in IL 695, along with prior OCC interpretive letters,

holding that a bank is "located" in a State in which it is conducting its fiduciary activities, the

OCC applied that same principle § 92a:

> In these other instances, just as with section 92a here, the statutes were similarly applied to the bank on a state-by-state basis. The bank was considered *present* in each state - through a branch, another type of office, or *merely doing business* - and treated under the statute in the same manner as any other national bank in the state.

*Id.* at \*13 (emphasis added).  The OCC says that this interpretation of the statute fosters

"desirable public policies," because:

> First, every national bank offering fiduciary services in a given state will have the same authority to conduct fiduciary business.  A national bank conducting fiduciary business and administering trust assets at a trust office will be subject to the same standards irrespective of whether the office is part of an in-state national bank or an out-of-state national bank.  Second, *there will be a level playing field for enhanced competition in the provision of fiduciary services within each state, because more potential providers will be able to compete on similar terms.*

*Id.* at \*14 (emphasis added).

A "level playing field" means that a national bank based in Texas but conducting fiduciary functions in Utah is subject to the same laws that a Utah-based national bank is. Otherwise, if the Texas based bank followed Texas law, and the Utah based bank followed Utah law, one of the banks would be at a competitive disadvantage.  That is not the intent of the NBA or § 92a of the Act.[1]

This is the concept of "competitive equality."

## C.   THE "STATE LAW CONDITION" AND "COMPETITIVE EQUALITY."

As has been pointed out by Plaintiff, and acknowledged by ReconTrust, State-chartered financial institutions in the State of Utah may be trustees, but they do not have the "power of sale" and therefore are prohibited under Utah law from conducting foreclosure sales.  Because this power is not given to Utah-chartered banks, § 92a(a) precludes national banks from exercising that power in the State.

It is a concept known in banking law as "competitive equality."  This concept provides for the regulation of national banks in certain specified areas of the banking business by making them subject to the same laws States impose on their state-chartered banks.  As noted by Chief Justice Warren Burger:

> The policy of competitive equality is ... firmly embedded in the statutes governing the national banking system.  The mechanism of referring to state law is simply one designed to implement that congressional intent and build into the federal statute a self-executing provision to accommodate to changes in state regulation.

---

[1] Speaking of the NBA, that would be like having the Utah Jazz play by one set of rules and the Houston Rockets another set when they play against each other in the same venue.

*First National Bank v. Dickinson*, 396 U.S. 122, 133 (1969).

One area of the banking business in which Congress granted a power to national banks –
subject to State law – is the authorization of fiduciary powers to national banks under § 92a(a).
*See Barnett v. Nelson,* 517 U.S. 25, 34 (1996).

It makes no sense under the concept of competitive equality that restrictions on the
"power of sale" would be applied to national banks and Utah-chartered financial institutions
operating in the State, but not to national banks having no office in the State but conducting
business in the State.  That turns the concept of "competitive equality" on its head.

### D.      FACTORING SECTION 92a(b) INTO THE EQUATION

In 1918 Congress amended the fiduciary powers granted to national banks as contained in
the Federal Reserve Board Act of 1913.  That amendment is what is now known as § 92a(b), and
is essentially the flip side of § 92a(a).  It is titled "Grant and Exercise of Powers Deemed not in
Contravention of State or Local Law."  Section 92a(b) states:

> Whenever the laws of such State authorize or permit the
> exercise of any or all of the foregoing powers by State
> banks, trust companies, or other corporations which
> compete with national banks, the granting to and the
> exercise of such powers by national banks shall not be
> deemed to be *in contravention of State or local law* within
> the meaning of this section.

The purpose of this section was to permit a national bank to exercise fiduciary powers in a State,
even if State law prohibits it from functioning in the State, as long as that State permits those
powers to be exercised by its own State institutions.  *See* IL 695 at *8.  Thus, if a State permits its

own State-chartered institutions to exercise certain fiduciary powers – and State law prohibited national banks from exercising those same powers – then the national bank operating in the State is empowered by § 92a(b) to exercise those same powers.  But § 92a(b) makes it all dependent on the law of the State in which the national bank is operating – not some distant State where it may have an office.

## E.    RULE 9.7(d).

ReconTrust cites one sentence in Rule 9.7(d) on which it bases its claim that it is acting in Texas when it conducts foreclosures in Utah.  That sentence provides: "A national banks acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets."  12 CFR § 9.7(d).

First of all, reliance on that single sentence excludes all of the analysis and interpretive letters by the OCC that has gone into the formulating of Rule 9.7.  Secondly, reliance on that single sentence works fine for determining what State law should be applied for a trustee of a trust, which is the situation the rules are designed to address, but it becomes problematic when dealing with a trustee of a trust deed.

### 1.    Trying to Fit a Square Peg into a Round Hole.

ReconTrust is the only national bank in the country exercising its fiduciary powers solely to be a trustee of trust deeds to conduct real estate foreclosures. It is a non-depository bank, operating in no other trust capacity.  The OCC did not write the rules focusing on the activities of

just one national bank or on the legal permutations of trustees of trust deeds.[2]  The rules are

written to cover trust departments of national banks acting as a trustee of a trust.  And finally, the

rule nowhere takes into consideration a substitute trustee not approved by the trustor.  That never

happens with a trust.  The appointment of a trustee or successor trustee of a trust is always

someone designated by the trustor.  That is not true for a substitute trustee of a real estate trust

deed.  In fact, it is just the opposite.  A substitute trustee is never known to the trustor of a trust

deed.

The plain fact of the matter is, trying to make a trustee of a trust deed fit into the same

scenario as a trustee of a trust is like trying to fit a square peg into a round hole.  They are just not

the same.  As was so artfully put by the California Supreme Court:

> The similarities between a trustee of an express trust and a trustee
> under a deed of trust end with the name.  Just as a panda is not a
> true bear, a trustee of a deed of trust is not a true trustee. * * *
> [T]he trustee of an express trust has broad powers over trust
> property.  The trustee is statutorily empowered to acquire or
> dispose of trust property and to manage, control, divide, develop,
> improve, exchange, partition, change the character of, or abandon
> trust property or any interest therein.
>
> [T]he trustee under a deed of trust does not have a true trustee's
> interest in, and control over, the trust property.  Nor is it bound by
> the fiduciary duties that characterize a true trustee.

*Monterey S.P. Partnership v. W. L. Bangham, Inc.*, 777 P.2d 623, 628 (Cal. 1989) (internal

citations and quotation marks omitted).

---

[2]In fact, there is no OCC interpretive letter dealing with trustees of trust deeds.  It simply is not an issue that the OCC deals with.  And ReconTrust refuses to make it an issue with the OCC – for good reason.  Their position flies in the face of everything the OCC has written about: (1) their interpretation of the word "located" in § 92a, and (2) their application of one sentence in Rule 9.7(d) to substitute trustees of trust deeds.

And the "fiduciary" characterization of a trustee of a trust deed is not universally accepted either.   As stated by the Utah Supreme Court:

> The duty of the trustee under a trust deed is greater than the mere obligation to sell the pledged property in accordance with the default provision the trust deed instrument, it is a duty to treat the trustor fairly and in accordance with a high punctilio of honor.

*Blodgett v. Marsch,* 590 P.2d 298, 302 (1978).  "Treat the trustor fairly" and "high punctilio of honor" is not the same as "one who owes to another the duties of good faith, trust, confidence, and candor."  Black's Law Dictionary, 8th ed., definition of "fiduciary," p. 658.

Yet in this case we are trying to fit a non-fiduciary trustee into a statute and regulations designed for fiduciaries, and a trustee of a trust deed into a statute and regulations designed for trustees of trusts.  They are just not the same.

### 2.      The Rules as Applied to a Trustee of a Trust.

If we were discussing a trust, which is the more common form of dealing with trustees, and for which the OCC rules and interpretive letters are written, then all of a sudden the one sentence ReconTrust cites in Rule 9.7(d) makes perfectly good sense.  Suppose, for instance, that John Doe of Salt Lake City owns property in Utah, Arizona and California.  He wants to form a trust (probably for estate planning purposes) and have Zions First National Bank administer the trust as the trustee.  He visits the trust department of Zions Bank, asks for a trust to be created with the bank as trustee.  The bank then manages the trust.  The documents creating the trust are made in Utah, the trust document is executed in Utah, and the property is managed from Utah.  All discretionary decisions reside with Zions Bank and those decisions are made in Utah.  So even

though there is property in other States, § 92a and the OCC say that the law to be applied in the administering of the trust is Utah law.  Simple.  Makes perfectly good sense.  That is not our scenario with a trust deed.

Where a trust deed is executed has no legal bearing on the validity of a trust deed.  Where it is recorded does.  A trustee of a trust deed is created when the trust deed is executed.  That is what creates the appointment.  A substitute trustee merely steps into the shoes of the original trustee.  There is no new appoint created separate and apart from the trust deed.

### 3. Where Does a Substitute Trustee of a Trust Deed Accept its Appointment?  Does it Even Matter?

So, ReconTrust says that Texas is where it acts in a fiduciary capacity because Texas is: (1) where it accepted the fiduciary appointment, (2) where it executed the documents that create the fiduciary relationship, and (3) where it makes discretionary decisions regarding the investment or distribution of fiduciary assets.

No evidence has been taken in this case to determine the facts of any of the above statements, and an equally good – if not better – case can be made that all of those acts occurred in Utah.  Each point will be dealt with in turn.

First, ReconTrust argues that it accepted the fiduciary appointment in Texas.  Really? What is the evidence for that?  No document has been submitted to this Court substantiating that. Nothing.  What constitutes an appointment?  An appointment of a trustee of a trust deed originates with the trust deed itself.  Without the trust deed, there is no trustee.  And in this case, the trust deed was executed in Utah.  Further, a Substitution of Trustee does not have legal effect

until it is recorded.  In this case, that recording took place in Utah.  Until a Substitution of Trustee is recorded it has no legal effect.  Since the Substitution of Trustee had no legal effect until it was recorded, and it was recorded in Utah, it would seem logical that the appointment also occurred in Utah.

Second, ReconTrust claims that where it executes the documents that creates the fiduciary relationship is Texas.  But the document that creates a trustee's fiduciary relationship is the trust deed, and the deed of trust that creates the trustee appointment in this case was executed in Utah.  So, while the State thinks it is immaterial, the fact of the matter is, using ReconTrust's own argument, the document creating the appointment of the position of trustee of the trust deed was executed in Utah.

Third, Recontrust argues that because it makes discretionary decisions regarding the investment or distribution of fiduciary assets in Texas it is located in Texas.  Again there is no evidence before the Court of that.  And it is highly questionable.  What discretionary decisions are there to make?  When the property goes into default is not determined by the trustee.  Whether the property is to be set for sale is not determined by the trustee.  How the proceeds of the sale are to be divided is not determined by the trustee. So what discretionary decisions does ReconTrust make?  The fact is, for the foreclosures conducted by ReconTrust, all the discretionary decisions are made by Bank of America.

(The State would love the opportunity of deposing an officer of ReconTrust to ascertain what discretionary decisions ReconTrust makes in conducting foreclosures of trust deeds.)[3]

---

[3] All dealings the State of Utah has had regarding ReconTrust have been through Bank of America.

**F.     THE OCC'S ANALYSIS OF THE REGULATIONS WHEN PROMULGATED.**

ReconTrust repeatedly cites Rule 9.7(d) for the proposition that when it conducts

foreclosures in Utah it is acting in a fiduciary capacity in Texas.  But the OCC's Analysis

accompanying the promulgation of the Rules in the Federal Register belies that point.

In July, 2001 when the OCC promulgated the Rule 9.7, the OCC stated:

> The standards contained in the NPRM[4] reflected positions taken in
> three earlier OCC Interpretive Letters.  Interpretive Letter No. 695
> found that a national bank authorized to engage in fiduciary
> activities may act in a fiduciary capacity in any state that permits its
> own in-state fiduciaries to act in that capacity.

66 FR *34792.

On the point of which State law applies to a national bank exercising fiduciary powers, the

Analysis says that if a national bank acts, or proposes to act, in a fiduciary capacity in a particular

State, the bank may act in any of the eight fiduciary capacities expressly listed in section 92a(a)

"unless the state affirmatively prohibits that capacity for is own State Fiduciaries."  66 FR 34792

at *34794.  The Analysis makes no mention of a bank being required to comply with the State law

where it has a physical office.  It focuses entirely on where the bank "acts."

Referring to the "contravention clause" in § 92a, the Analysis says:

> [S]ection 92a(a) requires that a national bank look to the laws of the
> state in which it acts, or proposes to act, in a fiduciary capacity to
> determine what fiduciary capacities are permissible.

66 FR 34792, at *34794.

---

[4]Notice of Proposed Rule Making

To drive that point home, the OCC clearly states in promulgating Rule 9.7 that where a bank is "located" is not determined by where it has a physical office, but where it "acts."  That point could not be more clear in the following:

> Moreover, we disagree that "location" for purposes of section 92a is appropriately determined by the presence of a main office or bank branch.  As previously discussed, the Contravention Clause of section 92a requires that a bank look to the laws of the state in which it acts in one or more fiduciary capacities in order to determine the limits on those capacities.

66 FR 34792, at *34794-95.

Thus, determining where a fiduciary acts in conducting a foreclosure sale, under any method of critical analysis, does not appear to be a difficult question.  ReconTrust is not "acting" in Texas when it conducts foreclosures in Utah.  It just seems axiomatic that where the foreclosure takes place is where the trustee acts.  The State would be happy to go to an evidentiary hearing with ReconTrust before this Court on that point.  But the fact of the matter is, when ReconTrust records a Substitution of Trustee, it records it in Utah.  When it records the Notice of Default, that is also recorded in Utah.  When the Notice of Default is published by the trustee in a newspaper of general circulation, it is published in Utah.  The Notice of Trustee's Sale is recorded in Utah.  The calling of the actual foreclosure sale is also done in Utah.  None of those acts take place in Texas.[5] So what is it that ReconTrust does in Texas?

---

[5]In some ways, one wants to ask why not?  Why not just let ReconTrust do those acts in Texas? ReconTrust claims its fiduciary acts are done in Texas, so why not record the Notices and conduct the foreclosure sale in Texas?

Further, when the Utah homeowner takes out a loan for the purchase of a home in Utah the trust deed is typically signed in Utah.  It could be signed anywhere, but typically it is not.  But it does not matter, because the trust deed itself – which creates the appointment of the trustee – says that it is to be governed by "federal law and the law of the State in which the property is located." (¶ 24 of a typical TD.)  Thus, the actual document that creates the appointment of the trustee calls for the law of the State where the property is located to be the governing law.  It does not say: where the trustee is located.

But ReconTrust continues to argue (apparently with some success) that when it forecloses on a home in Utah it is really acting in Texas.  The argument is a red-herring.  The legal basis for that is nowhere to be found.

And the State of Utah simply does not comprehend that logic.

## CONCLUSION

Having an interest in protecting the integrity of its statutes and preserving the citizens of this State in their homes, the State of Utah should be permitted to intervene in this case pursuant to Federal Rules of Civil Procedure 24(b)(2).  Secondly, this Memorandum submitted by the State of Utah should be considered in a hearing on Plaintiffs' Motion for Reconsideration.  And, thirdly, the State of Utah should be allowed to appear and present oral argument at such a hearing.

DATED this 21st day of March, 2012.

MARK L. SHURTLEFF
UTAH ATTORNEY GENERAL
  /s/   Jerrold S. Jensen
JERROLD S. JENSEN
Assistant Utah Attorney General
Attorney for Intervenor

## CERTIFICATE OF SERVICE

This certifies electronically filed using the court's CM/ECF system, and I mailed a true and correct copy by U.S. mail, postage prepaid, to the following non CM/ECF participants: This is to certify that copies of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE** was served by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of:

Philip D. Dracht
pdracht@fabianlaw.com

Marcus R. Mumford
Ryan R. West
Tyson B. Snow
mrm@mumfordwest.com
rrw@mumfordwest.com
tbs@mumfordwest.com


_____/s/ Sherri L. Cornell_____